**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
John T. Jasnoch (281605)
jjasnoch@scott-scott.com
Joseph Pettigrew (236933)
jpettigrew@scott-scott.com
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile:  619-233-0508

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Thomas K. Boardman (276313)
tboardman@scott-scott.com
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile:  212-223-6334

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNEMARIE NEWBOLD, on Behalf of Herself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CLOSETS BY DESIGN, INC. and CBD FRANCHISING, INC.,<br><br>Defendants. | No.<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Annemarie Newbold alleges the following based upon personal knowledge as to herself and her own acts, and upon information and belief and investigation by Plaintiff's counsel, which included, among other things, a review of public documents, marketing materials, and announcements made by and/or concerning Closets by Design, Inc. and CBD Franchising, Inc. (collectively, "Closets by Design" or "Defendants") as to all other matters.  Plaintiff believes that substantial additional evidentiary support exists for the allegations set forth herein and will be available after a reasonable opportunity for discovery.

## **INTRODUCTION**

1.    This action seeks to remedy the unfair, deceptive, and unlawful business practices of Defendants with respect to the marketing, advertising, and sales of merchandise and services offered by Defendants.

2.    Defendants offer design and installation services of custom closets, garage organizers, entertainment centers, and home office systems – all at purportedly deep discounts off of the "regular" or "original" retail price. Throughout the Class Period (defined below), Defendants misrepresented the existence, nature, and amount of price discounts on merchandise and services offered for sale by purporting to offer specific dollar or percentage discounts from "regular" or "original" retail prices.  These purported discounts are false and misleading, however, because the "regular" or "original" prices advertised by Defendants are fabricated or inflated, and do not represent the actual regular prices

1

for Defendants' merchandise and services.  In fact, Defendants never sold the merchandise or services at their "regular" or "original" prices in meaningful amounts or for meaningful periods of time.  Moreover, the advertised "regular" or "original" prices for the affected merchandise were not the prevailing retail market prices within three months immediately preceding the publication and dissemination of the advertised former prices, as required by California law.

3.     As a result of Defendants' false and misleading advertising and marketing of supposedly discounted retail prices based on "regular" or "original" prices, Plaintiff and members of the proposed Class have suffered injury in fact, including economic damages, and have lost money or property.  Specifically, Plaintiff and members of the Class have purchased Defendants' merchandise and services under the mistaken belief that these products were actually offered for sale at a meaningful discount from Defendants' "regular" or "original" prices for those services and merchandise.  But for Defendants' false and misleading advertising and marketing of their merchandise, Plaintiff and members of the Class would not have purchased such merchandise.

4.     Plaintiff brings claims on behalf of herself and the proposed Class for unjust enrichment and violations of, among other statutes, the Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq*. ("CLRA"); the Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq*. ("UCL"); and the California False Advertising Law, Cal. Bus. & Prof. Code §17500, *et seq*. ("FAL").  Plaintiff seeks

2

1  to permanently enjoin Defendants from using false and misleading claims

2  regarding retail price comparisons or reductions in their marketing and advertising.

3  Further, Plaintiff seeks to obtain restitution and other appropriate relief in the

4  amount by which Defendants were unjustly enriched as a result of their sales of

5  merchandise offered at a false discount.  Plaintiff also seeks damages as provided

6  for pursuant to the CLRA.   Finally, Plaintiff seeks reasonable attorneys' fees

7  pursuant to Cal. Code Civ. Proc. §1021.5 as this lawsuit seeks the enforcement of

8  an important right affecting the public interest and satisfies the statutory

9  requirements for an award of attorneys' fees.

10                          **PARTIES**

11          5.       Plaintiff Annemarie Newbold is a citizen of Kentucky.   During the

12  Class Period, Plaintiff purchased a closet organization system from Defendants at a

13  purported sale or discount price off of Defendants' "regular" or "original" prices.

14  Plaintiff relied on Defendants' deceptive advertising and marketing in deciding to

15  purchase the merchandise/services and suffered damages by Defendants' actions.

16  Were it not for Defendants' deceptive advertising and marketing, Plaintiff would

17  not have purchased the merchandise/services.

18          6.       Defendant Closets by Design, Inc. ("CBD Inc.") is a California

19  company with its principal place of business located at 3860 Capitol Ave.,

20  Whittier, CA 90601.   CBD Inc. is a subsidiary of Home Organizers, Inc., a

21  California company.   CBD Inc. owns and operates the Closets by Design brand's

1   corporate-owned locations, and therefore, is an active participant in the deceptive

2   pricing scheme.  CBD Inc. also owns and controls the website and landing pages,

3   as well as, the print advertising and coupons, where Defendants offered their

4   purported discounts off the represented regular and original retail prices.

5         7.     Defendant CBD Franchising, Inc. ("CBDF") is a California company

6   with its principal place of business located at 13272 Garden Grove Boulevard,

7   Garden Grove, CA 92843.  CBDF is also a subsidiary of Home Organizers, Inc.

8   CBDF is a franchisor that sells Closets by Design branded franchises to franchisees

9   located across the country.  CBDF controls the uniform nationwide marketing and

10  advertising program utilized by both the corporate-owned and franchised locations.

11                    **JURISDICTION AND VENUE**

12        8.     This Court has jurisdiction over this action under the Class Action

13  Fairness Act, 28 U.S.C. §1332(d).  The aggregated claims of the individual Class

14  members exceed the sum or value of $5,000,000, exclusive of interests and costs;

15  there are more than 100 members of the putative Class (defined below); and this is

16  a class action in which there is minimal diversity because Plaintiff is a citizen of a

17  different state than Defendants CBD Inc. and CBDF.

18        9.     This Court has personal jurisdiction over Defendants CBD Inc. and

19  CBDF because they are headquartered in California, systematically and

20  continuously conducted business in and throughout the State of California, and

21  intentionally avail themselves of the markets within California through the

4

1  promotion, sale, marketing, and distribution of their products.  Moreover, their

2  wrongful conduct, as described herein, emanated from California and foreseeably

3  affects consumers in California.

4       10.   Venue is proper in this District under 28 U.S.C. §1391(b)(2) because a

5  substantial part of the events or omissions giving rise to Plaintiff's claims occurred

6  in this District.  Under 28 U.S.C. §§1391(c)(2) and (d), Defendants CBD Inc. and

7  CBDF are deemed to reside in this District and their wrongful conduct relating to

8  the alleged deceptive pricing scheme emanated and was directed from this District.

9  As such, venue is proper in this judicial district under 28 U.S.C. §1391(b)(2)

10  because Defendants conduct business in this District and a substantial part of the

11  acts or omissions giving rise to the claims set forth herein occurred in this District.

12       11.   A venue affidavit pursuant to California Civil Code §1780(d) is

13  attached as Exhibit 1.

14  **FACTUAL ALLEGATIONS**

15  **A.**    **Closets by Design's Business and Marketing of Its Products**

16       12.   Closets by Design was founded in 1982.  As of 2018, Closets by

17  Design owned or franchised 57 locations, including 3 company-owned locations,

18  47 U.S. franchised locations, and 7 non-U.S. franchised locations, and operated an

19  e-commerce website (www.closetsbydesign.com).  Defendants offer design and

20  installation of custom closets, garage organizers, entertainment centers, and home

21  office systems.  Closets by Design's website includes information about

5

1  Defendants' merchandise and services, and links to coupons for each of its

2  corporate-owned and franchised locations.

3      13.   Closets by Design prominently, continuously, and uniformly offers

4  significant percentage and dollar "discounts" to consumers nationwide for its

5  merchandise and services.

6      14.   Unfortunately, the "discounts" that Closets by Design presents to its

7  customers are illusory.  Closets by Design offers its customers purported "savings"

8  that are based on false and inflated "regular" or "original" prices.  There is no

9  "regular" or "original" price at which Closets by Design merchandise and services

10  are routinely, if ever, sold to customers by Closets by Design.

11      15.   Closets by Design knew or should have known that its pricing scheme

12  was intended to convey false information to consumers, including Plaintiff, about

13  the merchandise and services, to cause consumers to purchase such merchandise

14  and services believing that they were obtaining them at a significant savings, below

15  their actual or regular prices.

16      16.   Defendants' representations were likely to mislead reasonable

17  consumers into believing that Defendants' prices were significantly lower than the

18  prices regularly offered for those products by Defendants, or offered by other

19  merchants for similar products, and that consumers would enjoy significant savings

20  by purchasing those products from Defendants instead of from other merchants.

21

CLASS ACTION COMPLAINT

17.     Defendants' false and/or misleading pricing representations made it more likely that consumers would purchase particular products from Defendants. Defendants' misleading claims of a huge discount (at least 40% or $200 off) were likely to deceive consumers who were not inclined to purchase the product at all to buy it from Defendants because they were misled into believing that they were getting the item at a true discount.

18.     Plaintiff is informed and believes that the alleged "regular" or "original" prices for Defendants' merchandise and services at all relevant times throughout the Class Period were false prices and not true prices that Defendants had previously employed for such items.

19.     Since at least in or around July 2014, Defendants have engaged in a brand-wide, pervasive and continuous campaign of falsely claiming that their merchandise and services sold at a far higher price in order to induce Plaintiff and all Class members to purchase merchandise at purportedly marked-down sale prices.

20.     Plaintiff is informed and believes that Defendants' scheme, disseminated to consumers via print and internet advertising, is part of a concerted, years-long, pervasive nationwide campaign and has been consistently implemented across all of Defendants' merchandise at each of its locations and online. Defendants' pricing scheme has been prominently displayed in coupons and other similar offers, with express references to alleged "discounts" that have never

7

1   existed and/or do not, and/or did not then, currently reference the true prevailing

2   market retail prices for such merchandise.

3   **B.     Applicable Price Discounting Laws**

4       21.   The Federal Trade Commission Act ("FTCA") prohibits "unfair or

5   deceptive acts or practices in or affecting commerce."  (15 U.S.C. §45(a)(1).)  The

6   FTCA specifically makes it "unlawful for any person, partnership, or corporation

7   to disseminate, or cause to be disseminated, any false advertisement."  (15 U.S.C.

8   §52(a).)

9       22.   Under the FTCA, advertising must be truthful and non-deceptive,

10  advertisers such as Defendants must have evidence to back up their claims, and

11  advertisements cannot be unfair.  An advertisement is deceptive, according to the

12  Federal Trade Commission ("FTC"), if it contains a misstatement or omits

13  information that is likely to mislead consumers acting reasonably under the

14  circumstances, and the statement or omitted information is material – that is,

15  important to a consumer's decision to buy or use the product.

16      23.   The FTC has issued regulations describing misleading discount price

17  comparison schemes such as those used by Defendants as deceptive:

18          One of the most commonly used forms of bargain advertising is

19          to offer a reduction from the advertiser's own former price for

20          an article.  If the former price is the actual, bona fide price at

21          which the article was offered to the public on a regular basis for

8

1    a reasonably substantial period of time, it provides a legitimate

2    basis for the advertising of a price comparison.   Where the

3    former price is genuine, the bargain being advertised is a true

4    one.  If, on the other hand, the former price being advertised is

5    not bona fide but fictitious – for example, where an artificial,

6    inflated price was established for the purpose of enabling the

7    subsequent offer of a large reduction – the "bargain" being

8    advertised is a false one; the purchaser is not receiving the

9    unusual value he expects.  In such a case, the "reduced" price

10    is, in reality, probably just the seller's regular price.

11  16 C.F.R. §233.1(a).

12    A former price is not necessarily fictitious merely because no

13    sales at the advertised price were made.  The advertiser should

14    be especially careful, however, in such a case, that the price is

15    one at which the product was openly and actively offered for

16    sale, for a reasonably substantial period of time, in the recent,

17    regular course of his business, honestly and in good faith – and,

18    of course, not for the purpose of establishing a fictitious higher

19    price on which a deceptive comparison might be based.  And

20    the advertiser should scrupulously avoid any implication that a

21    former price is a selling, not an asking price (for example, by

9

use of such language as, "Formerly sold at $___"), unless substantial sales at that price were actually made.

16 C.F.R. §233.1(b).

> *If the former price is set forth in the advertisement, whether accompanied or not by descriptive terminology such as "Regularly," "Usually," "Formerly," etc., the advertiser should make certain that the former price is not a fictitious one.*

16 C.F.R. §233.1(e).  [Emphasis added.]

Another commonly used form of bargain advertising is to offer goods at prices lower than those being charged by others for the same merchandise in the advertiser's trade area (the area in which he does business).  This may be done either on a temporary or a permanent basis, but in either case the advertised higher price must be based upon fact, and not be fictitious or misleading.  Whenever an advertiser represents that he is selling below the prices being charged in his area for a particular article, he should be reasonably certain that the higher price he advertises does not appreciably exceed the price at which substantial sales of the article are being made in the area – that is, a sufficient number of sales so that a consumer would

10

1    consider a reduction from the price to represent a genuine

2    bargain or saving.

3  16 C.F.R. §233.2(a).

4        The practices covered in the provisions set forth above

5    represent the most frequently employed forms of bargain

6    advertising.  However, there are many variations which appear

7    from time to time and which are, in the main, controlled by the

8    same general principles.  For example, retailers should not

9    advertise a retail price as a "wholesale" price.  They should not

10   represent that they are selling at "factory" prices when they are

11   not selling at the prices paid by those purchasing directly from

12   the manufacturer.  They should not offer seconds or imperfect

13   or irregular merchandise at a reduced price without disclosing

14   that the higher comparative price refers to the price of the

15   merchandise if perfect.  They should not offer an advance sale

16   under circumstances where they do not in good faith expect to

17   increase the price at a later date, or make a "limited" offer

18   which, in fact, is not limited.  In all of these situations, as well

19   as in others too numerous to mention, advertisers should make

20   certain that the bargain offer is genuine and truthful.  Doing so

21   will serve their own interest as well as that of the public.

1  16 C.F.R. §233.5.

2      24.    Likewise, California law specifically forbids false or misleading price

3  comparison schemes:

> For the purpose of this article the worth or value of anything
> advertised is the prevailing market price, wholesale if the offer
> is at wholesale, retail if the offer is at retail, at the time of
> publication of such advertisement in the locality wherein the
> advertisement is published.
>
> No price shall be advertised as a former price of any advertised
> thing, unless the alleged former price was the prevailing market
> price as above defined within three months next immediately
> preceding the publication of the advertisement or unless the
> date when the alleged former price did prevail is clearly,
> exactly and conspicuously stated in the advertisement.

Cal. Bus. & Prof. Code §17501.

> The following unfair methods of competition and unfair or
> deceptive acts or practices undertaken by any person in a
> transaction intended to result or that results in the sale or lease
> of goods or services to any consumer are unlawful: [. . .]
> Making false or misleading statements of fact concerning
> reasons for, existence of, or amounts of price reductions.

12

1  Cal. Civ. Code §1770(a)(13).

2  **C.    Closets by Design Continuously and Uniformly Engages in Deceptive Pricing**

3       25.    Defendants maintain a uniform, centralized, tightly controlled

4  nationwide marketing program from their corporate headquarters in California,

5  which covers the advertising and marketing operations of both its company-owned

6  and franchised locations throughout the United States.  This program is described

7  in detail in, and enforced by, the franchise agreement between Defendant CBDF

8  and franchisees.  The purpose of the centralized marketing structure is to keep

9  strict control over Closets by Design's advertising program.  According to the

10  Closets by Design website, which is owned and operated by Defendant CBD Inc.:

11  "***The corporate run, highly effective national advertising and marketing***

12  ***programs generate leads and customer awareness.***" https:// franchise.closets

13  bydesign.com / about-closets-by-design/ (last visited January 14, 2019.).

14  [Emphasis added.]

15       26.    According to the "Franchise Disclosure Document," which

16  summarizes the Franchise Agreement, as well as the Franchise Agreement itself,

17  Defendant CBDF operates a "National Promotion and Protection Fund," the fees

18  from which are used for the national promotion, enhancement and protection of the

19  Closets by Design system.  Franchisees are required to contribute 2.25% of their

20  monthly gross revenues to this fund.  Defendant CBD Inc.'s company-owned

21

1   locations, as well as franchisees, participate in the national advertising and

2   marketing scheme.

3       27.    Defendants maintain near-complete control over nearly every aspect

4   of the national advertising scheme.   For example, according to the Franchise

5   Disclosure Document and the Franchise Agreement:

6           ***[CBD Franchising, Inc.] will determine the cost, form or***

7           ***media, content, format, production and timing, including***

8           ***regional or local concentration and seasonal exposure,***

9           ***location and all other matters involving advertising, public***

10          ***relations and promotional campaigns*** (see section 10.04 of the

11          Franchise Agreement). We intend to use the following

12          advertising media: direct mail, print media and electronic media

13          where appropriate and cost effective. The media coverage may

14          be local, regional or national. We will be using in-house

15          advertising personnel, but we also intend to engage the services

16          of advertising and public relations firms to assist in our

17          advertising program.

18                          *  *  *

19          You may develop advertising materials for your own use, at

20          your own cost. ***But we must approve the advertising materials***

21          ***in advance and in writing. You may not, without our prior***

*written consent, advertise in any medium we have not previously approved in writing or use any advertising outlet through which we maintain a system-wide advertising program (e.g. Val Pak, Money Mailer and other outlets we identify from time to time).*

\* \* \*

*You may only use advertising which we have either furnished or approved in writing in advance.*

\* \* \*

*We will direct all advertising programs with sole control over the creative concepts, materials and media used in the programs, and the placement and allocation of advertising.*

[Emphasis added.]

28.    Defendants maintain a central e-commerce website for informational, marketing, and sales purposes: http://www.closetsbydesign.com (last visited Jan. 14, 2019).  Each landing page of this website indicates that Defendant CBD Inc. is the owner of the copyright for the website.  This website is used to communicate Closets by Design's advertising and marketing campaign to consumers nationwide. The website includes links to each of the stores' locations, as well as company-wide special offers.  Currently, the homepage of the website offers 40% off plus free installation, plus an extra 15% off.  Clicking on the "Get Started Now" and

1  "Find Out How" buttons takes you to a page with the same offer above a fillable

2  contact form[1]:



8      29.    The sub-page for each Closets by Design location includes uniform

9  links to "coupons for this location."  Throughout the Class Period, these coupons

10  uniformly offered either (1) 40% off plus free installation; or (2) $200 off plus free

11  installation for each location, whether franchised or company-owned.  For

12  example, the following are the current coupons for the Atlanta, Georgia;

13  Cincinnati, Ohio; Fresno, California; Louisville, Kentucky; Salt Lake City, Utah;

14  Southern California; and Portland, Oregon, locations, respectively[2]:

---

[1]    https://www.closetsbydesign.com/ (last visited Jan. 14, 2019)

[2]    https://atlanta.closetsbydesign.com/laundry-pantry-and-more/coupons (40% off) (last visited Jan. 14, 2019); https://cincinnati.closetsbydesign.com/coupons (40% off) (last visited Jan. 14, 2019); https://fresno.closetsbydesign.com/coupons (40% off) (last visited Jan. 14, 2019); https://louisville. closetsbydesign.com/coupons (40% off) (last visited Jan. 14, 2019); https://saltlakecity.closetsbydesign.com/coupons ($200 off) (last visited Jan. 14, 2019); https://southerncalifornia.closetsbydesign.com/coupons ($200 off); https://portland.closetsbydesign.com/coupons ($200 off) (last visited Jan. 14, 2019).

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10



11    30.    The Closets by Design website has offered identical online "coupons"

12    continuously during the Class Period.  Beginning at least in or around July 2014,

13    all locations offered uniform coupons for $200 off plus free installation.

14    Beginning in or around early 2016, certain locations began offering uniform

15    coupons for 40% off plus free installation, while other locations maintained the

16    $200 off coupons.  Since that time, each location has continued to offer one of

17    these two purported discounts continuously.

18    31.    Closets by Design likewise distributes identical coupons to consumers

19    nationwide via direct mail advertising.  These coupons indicate that Defendant

20    CBD Inc. is the owner of the copyright for the coupon and the coupons provide a

21    nationwide toll-free contact phone number for a consultation and estimate.  These

1   coupons contain the same percentage and/or dollar "discount" offers that are

2   offered on the Closets by Design website, with an occasional "extra" discount in

3   addition to the uniform baseline 40% off or $200 off offers:



**D.    Plaintiff's Receipt of Purported Discount Offers and Purchases of Company Merchandise and Services**

32.    Plaintiff received, viewed, and relied on a direct mail advertising coupon, which was substantially identical to those described above, before buying Defendants' merchandise.

33.   In reliance on the purported discount offer, Plaintiff purchased Defendants' merchandise and services for a closet organization system.  According to a quote dated February 12, 2015, and a contract dated April 23, 2015, Plaintiff purchased an "Everyday Collection in White" system.   The estimate listed a "National List Price" of $3,932.00, from which was deducted a 20% "Regional Discount" and a "20% coupon discount," to give a total price of $2,516.48, which was further reduced to Plaintiff's purchase price of $1,400.  The $3,932.00 national list price was not the prevailing retail market price within three months immediately preceding the publication and dissemination of the advertised "discounted from" prices.  Plaintiff was deceived into believing that Defendants' price was based off of a genuine "regular" or "original" price.

34.   As a result of Defendants' conduct detailed herein, Defendants violated the aforementioned provisions of federal and state law.

**DAMAGES TO PLAINTIFF AND THE CLASS**

35.   Plaintiff purchased merchandise from Defendants in reliance on Defendants' pricing, advertising, and marketing that the merchandise represented legitimate savings, as described above.

36.   Plaintiff and the members of the Class would not have purchased the merchandise from Closets by Design were it not for the purported "savings" off of a "regular" or "original" price as advertised by Defendants.

CLASS ACTION COMPLAINT

## **CLASS ACTION ALLEGATIONS**

37.     Plaintiff brings this action individually and on behalf of the following Class pursuant to Federal Rule of Procedure 23 (the "Class"):

> All individuals residing in the United States who purchased Defendants' merchandise and services advertised at a discount any time during the applicable limitations period (the "Class Period").

38.     Plaintiff reserves the right to redefine the Class prior to certification.

39.     Excluded from the Class are Defendants, any of their parent companies, subsidiaries, and/or affiliates, their officers, directors, legal representatives, and employees, any co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

40.     This action is brought and may properly be maintained as a class action pursuant to Federal Rule of Civil Procedure 23.  This action satisfies the numerosity, typicality, adequacy, predominance, and superiority requirements of those provisions.

41.     The Class is so numerous that the individual joinder of all of its members is impracticable.  Due to the nature of the trade and commerce involved, Plaintiff believes that the total number of Class members is in the thousands and that members of the Class are geographically dispersed across the United States. While the exact number and identities of the Class members are unknown at this

CLASS ACTION COMPLAINT

1   time, such information can be ascertained through appropriate investigation and

2   discovery.

3        42.    Common questions of law and fact exist as to all members of the

4   Class, and these common questions predominate over any questions affecting only

5   individual members of the Class.  These common legal and factual questions,

6   which do not vary from Class member to Class member, and which may be

7   determined without reference to the individual circumstances of any Class member

8   include, but are not limited to, the following:

9            a.    whether Defendants violated provisions of the FTCA and

10           federal regulations through the pricing, advertising, and marketing of their

11           merchandise;

12           b.    whether Defendants' pricing, advertising, and marketing of

13           their merchandise was false and misleading;

14           c.    whether Defendants' conduct constitutes a violation of the

15   Consumers Legal Remedies Act (Cal. Civ. Code §1750, *et seq.*);

16           d.    whether Defendants' conduct constitutes a violation of

17   California's false advertising law (Cal. Bus. & Prof. Code §17500, *et seq.*);

18           e.    whether Defendants' conduct constitutes an unfair, unlawful,

19   and/or fraudulent business practice in violation of California's unfair

20   competition law (Cal. Bus. & Prof. Code §17200, *et seq.*);

21

f.      whether Plaintiff and the Class are entitled to compensatory damages, and if so, the nature of such damages;

g.      whether Plaintiff and the Class are entitled to restitutionary relief; and

h.      whether Plaintiff and the Class are entitled to injunctive relief.

43.    Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class have been similarly affected by Defendants' common course of conduct since they all relied on Defendants' representations concerning their merchandise and purchased one or more items based on those representations.

44.    Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff has retained counsel with substantial experience in handling complex class action litigation.   Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so.

45.    A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the Class is impracticable.   Even if individual members of the Class had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed.   Individual litigation magnifies the delay and expense to all parties in the court system of resolving the

controversies engendered by Defendants' common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all Class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the Class. Furthermore, for many, if not most, a class action is the only feasible mechanism that allows an opportunity for legal redress and justice.

46. This action is maintainable as a class action under Federal Rule of Civil Procedure 23(b)(1) because individual actions by Class members would create: (1) inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants; and/or (2) adjudications that, as a practical matter, would be dispositive of the interests of other Class members not parties to the adjudications, and would substantially impair or impede the ability of such non-party Class members to protect their interests.

47. This action is maintainable as a class action under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief respecting the Class as a whole.

48. This action is maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3) because the common questions of law and fact identified above, without limitation, predominate over any questions affecting only

23

individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## TOLLING OF THE STATUTES OF LIMITATION

**Fraudulent Concealment**

49.    Upon information and belief, Defendants have known that the purported discounts offered to consumers nationwide are fabricated or inflated, and do not represent the actual regular prices for Defendants' merchandise and services.  Likewise, Defendants have known that they never sold merchandise or services at any "regular" or "original" price in meaningful amounts or for meaningful periods of time.  Defendants have concealed from or failed to notify Plaintiff, Class members, and the public of the full and complete nature of their misleading advertising scheme.

50.    Any applicable statute of limitation has therefore been tolled by Defendants' knowledge, active concealment, and denial of the facts alleged herein, of which behavior is ongoing.

**Discovery Rule**

51.    The causes of action alleged herein did not accrue until Plaintiff and Class members discovered those causes of action.

52.    Plaintiff and Class members had no realistic ability to discern that Defendants were using deceptive and misleading advertising and marketing schemes to sell their merchandise and services.  Because of Defendants' active

24

concealment of the true nature of the scheme, Plaintiff and Class members had no reason to know that the significant discounts presented to them were entirely illusory.

53.    Plaintiff did not suspect that the discount offer she received was part of a systematic, uniform, years-long scheme to mislead and deceive the consuming public until years later, when she continued to routinely receive coupons touting the same discount that she had received years earlier.  Even then, it was not until the investigation of counsel confirmed the existence and scope of the scheme that Plaintiff was reasonably able to discover the causes of action alleged herein.

**Continuing Violation Doctrine**

54.    Defendants' continuous and consistent advertising program constitutes a series of wrongs or injuries.  Each republication of false and misleading purported discounts is a renewal of the wrong and injury.  Defendants continue to publish the false discounts to this day.  As a result, the limitations period continues to accrue.

**Equitable Tolling**

55.    Equitable tolling suspends or extends the statute of limitations when a plaintiff has reasonably and in good faith chosen to pursue one among several remedies and the statute of limitations' notice function has been served.

56.    Defendants have been on notice of Plaintiff's CLRA claims since receipt of her pre-suit demand letters, which are required under the statute before

1 bringing a claim for damages.  The statute of limitations function has thus been

2 served and has been tolled.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**(Unjust Enrichment on Behalf of the Class)**
**(Against All Defendants)**

6   57.   Plaintiff realleges each and every allegation contained above as if

7 fully set forth herein and, to the extent necessary, pleads this cause of action in the

8 alternative.

9   58.   Plaintiff brings this claim individually and on behalf of members of

10 the Class.  In all states, the focus of an unjust enrichment claim is whether the

11 defendant was unjustly enriched.   At the core of each state's law are two

12 fundamental elements – the defendant received a benefit from the plaintiff and it

13 would be inequitable for the defendant to retain that benefit without compensating

14 the plaintiff.  The focus of the inquiry is the same in each state.

15   59.   At all times relevant hereto, Defendants deceptively priced, marketed,

16 advertised, and sold merchandise to Plaintiff and the Class.

17   60.   Plaintiff and members of the Class conferred upon Defendants non-

18 gratuitous payments for merchandise that they would not have if not for

19 Defendants' deceptive pricing, advertising, and marketing.  Defendants accepted or

20 retained the non-gratuitous benefits conferred by Plaintiff and members of the

21 Class, with full knowledge and awareness that, as a result of Defendants'

26

1   deception, Plaintiff and members of the Class were not receiving a product of the

2   quality, nature, fitness, or value that had been represented by Defendants and

3   reasonable consumers would have expected.

4       61.   Defendants have been unjustly enriched in retaining the revenues

5   derived from purchases of merchandise by Plaintiff and members of the Class,

6   which retention under these circumstances is unjust and inequitable because

7   Defendants misrepresented, among other things, that their merchandise was being

8   offered at a significant discount, which caused injuries to Plaintiff and members of

9   the Class because they paid for, and/or paid a price premium due to the misleading

10  pricing and advertising.

11      62.   Retaining the non-gratuitous benefits conferred upon Defendants by

12  Plaintiff and members of the Class under these circumstances made Defendants'

13  retention of the non-gratuitous benefits unjust and inequitable.  Thus, Defendants

14  must pay restitution to Plaintiff and members of the Class for unjust enrichment, as

15  ordered by the Court.

16                  **SECOND CLAIM FOR RELIEF**

           **(Violations of California Business & Professions Code §17200 *et seq*.,**

17          **Based on Fraudulent Acts and Practices on Behalf of the Class)**

                    **(Against All Defendants)**

18

19      63.   Plaintiff realleges each and every allegation contained above as if

20  fully set forth herein and, to the extent necessary, pleads this cause of action in the

alternative.

21

CLASS ACTION COMPLAINT

64.   Plaintiff brings this claim individually, and on behalf of members of the Class.

65.   Under California Business & Professions Code §17200, any business act or practice that is likely to deceive members of the public constitutes a fraudulent business act or practice.

66.   Defendants have engaged, and continue to engage, in conduct that is likely to deceive members of the public.  This conduct includes, but is not limited to, misrepresenting that their merchandise is, among other things, being offered at a significant discount.

67.   After reviewing the pricing and advertising for Defendants' merchandise, Plaintiff purchased merchandise in reliance on Defendants' representations that their merchandise is, among other things, being offered at a significant discount.  Plaintiff would not have purchased Closets by Design merchandise at all but for Defendants' false promotion of their merchandise as, among other things, being offered at a significant discount.  Plaintiff and the Class have all paid money for Closets by Design merchandise.  Accordingly, Plaintiff and the Class have suffered injury in fact and lost money or property as a direct result of Defendants' misrepresentations and material omissions.

68.   By committing the acts alleged above, Defendants have engaged in fraudulent business acts and practices, which constitute unfair competition within the meaning of California Business & Professions Code §17200.

69.     In accordance with California Business & Professions Code §17203, Plaintiff seeks an order: (1) enjoining Defendants from continuing to conduct business through their fraudulent conduct; and (2) requiring Defendants to conduct a corrective advertising campaign.

70.     As a result of Defendants' conduct, Plaintiff seeks injunctive and restitutionary relief under California Business & Professions Code §17203.

### THIRD CLAIM FOR RELIEF
**(Violations of California Business & Professions Code §17200, *et seq*., Based on Commission of Unlawful Acts on Behalf of the Class)**
**(Against All Defendants)**

71.     Plaintiff realleges each and every allegation contained above as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

72.     Plaintiff brings this claim individually, and on behalf of members of the Class.

73.     The violation of any law constitutes an unlawful business practice under California Business & Professions Code §17200.

74.     Defendants have violated §17200's prohibition against engaging in unlawful acts and practices by, *inter alia*, making the representations and omissions of material facts, as set forth more fully herein, and violating California Civil Code §§1572, 1573, 1709, 1710, 1711, 1770, California Business & Professions Code §17200 *et seq*., the FTCA, 15 U.S.C. §45(a)(1) and 52(a),

California Business and Professions Code §17501, similar consumer protection statute nationwide, and by violating the common law.

75.   By violating these laws, Defendants have engaged in unlawful business acts and practices which constitute unfair competition within the meaning of California Business & Professions Code §17200.

76.   Plaintiff purchased Closets by Design merchandise in reliance on Defendants' representations that their merchandise was, among other things, being offered at a significant discount.   Plaintiff would not have purchased the merchandise at all but for Defendants' false promotion that their merchandise was, among other things, being offered at a significant discount.   Plaintiff and the Class have all paid money for Closets by Design merchandise.   Accordingly, Plaintiff and the Class have suffered injury in fact and lost money or property as a direct result of Defendants' misrepresentations and material omissions.

77.   In accordance with California Business & Professions Code §17203, Plaintiff seeks an order: (1) enjoining Defendants from continuing to conduct business through their fraudulent conduct; and (2) requiring Defendants to conduct a corrective advertising campaign.

78.   As a result of Defendants' conduct, Plaintiff seeks injunctive and restitutionary relief under California Business & Professions Code §17203.

CLASS ACTION COMPLAINT

## **FOURTH CLAIM FOR RELIEF**

**(Violations of California Business & Professions Code §17200, *et seq*.,
on Behalf of the Class – Unfair Acts and Practices)
(Against All Defendants)**

79.     Plaintiff realleges each and every allegation contained above as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

80.     Plaintiff brings this claim individually, and on behalf of members of the Class.

81.     Under California Business & Professions Code §17200, any business act or practice that is unethical, oppressive, unscrupulous, and/or substantially injurious to consumers, or that violates a legislatively declared policy, constitutes an unfair business act or practice.

82.     Defendants have engaged, and continue to engage, in conduct which is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers.  This conduct includes representing that their merchandise is, among other things, being offered at a significant discount when, in fact, it is not.

83.     Defendants have engaged, and continue to engage, in conduct that violates the legislatively declared policies of: (1) California Civil Code §§1572, 1573, 1709, 1710, 1711 against committing fraud and deceit; (2) California Civil Code §1770 against committing acts and practices intended to deceive consumers regarding the representation of goods in certain particulars; (3) the FTCA, 15

CLASS ACTION COMPLAINT

U.S.C. §§45(a)(1) and 52(a) against unfair or deceptive practices and false advertising; (4) California Business & Professions Code §17501 against false advertising; and (5) similar consumer protection statutes nationwide. Defendants gain an unfair advantage over their competitors, whose labeling, advertising, and marketing for other similar products must comply with these laws.

84. Defendants' conduct, including misrepresenting the pricing of their merchandise, is substantially injurious to consumers. Such conduct has caused, and continues to cause, substantial injury to consumers because consumers would not have purchased their merchandise at all but for Defendants' false promotion of their merchandise as, among other things, being offered at a significant discount. Consumers have thus overpaid for Closets by Design merchandise. Such injury is not outweighed by any countervailing benefits to consumers or competition. Indeed, no benefit to consumers or competition results from Defendants' conduct. Since consumers reasonably rely on Defendants' representations of their merchandise and injury results from ordinary use of their merchandise, consumers could not have reasonably avoided such injury. *Davis v. Ford Motor Credit Co. LLC*, 179 Cal. App. 4th 581, 597-98 (2009); *see also Drum v. San Fernando Valley Bar Assn.*, 182 Cal. App. 4th 247, 257 (2010) (outlining the third test based on the definition of "unfair" in Section 5 of the FTC Act).

85.     By committing the acts alleged above, Defendants have engaged in unfair business acts and practices which constitute unfair competition within the meaning of California Business & Professions Code §17200.

86.     Plaintiff purchased Closets by Design merchandise in reliance on Defendants' representations that their merchandise is, among other things, being offered at a significant discount. Plaintiff would not have purchased her merchandise at all but for Defendants' false promotion that their merchandise is, among other things, being offered at a significant discount.  Plaintiff and the Class have all paid money for Closets by Design merchandise.  Accordingly, Plaintiff and the Class have suffered injury in fact and lost money or property as a direct result of Defendants' misrepresentations and material omissions.

87.     In accordance with California Business & Professions Code §17203, Plaintiff seeks an order enjoining Defendants from continuing to conduct business through their fraudulent conduct and further seeks an order requiring Defendants to conduct a corrective advertising campaign.

88.     As a result of Defendants' conduct, Plaintiff seeks injunctive and restitutionary relief under California Business & Professions Code §17203.

**FIFTH CLAIM FOR RELIEF**
**(Violations of the CLRA on Behalf of the Class**
**for Injunctive Relief and Damages)**
**(Against All Defendants)**

89.     Plaintiff realleges each and every allegation contained above as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

90.     Plaintiff brings this claim individually, and on behalf of members of the Class.

91.     Plaintiff purchased Closets by Design merchandise for her own personal use.

92.     The acts and practices of Defendants as described above were intended to deceive Plaintiff and members of the Class as described herein, and have resulted, and will result in, damages to Plaintiff and members of the Class. These actions violated and continue to violate the CLRA in at least the following respects:

a.     In violation of §1770(a)(5) of the CLRA, Defendants' acts and practices constitute representations that their merchandise has characteristics, uses, and/or benefits, which it does not;

b.     In violation of §1770(a)(9) of the CLRA, Defendants' acts and practices constitute the advertisement of the goods in question without the intent to sell them as advertised; and

34

1           c.    In violation of §1770(a)(13) of the CLRA, Defendants' acts and

2    practices constitute false or misleading statements of fact concerning reasons

3    for, existence of, or amounts of price reductions.

4    93.    By committing the acts alleged above, Defendants have violated the

5    CLRA.

6    94.    Plaintiff and Class members suffered injuries caused by Defendants'

7    misrepresentations because: (a) they were induced to purchase a product they

8    would not have otherwise purchased if they had known that Closets by Design

9    merchandise was not, among other things, being offered at a significant discount;

10    and/or (b) they paid a price premium due to the false and misleading pricing,

11    advertising, and marketing of Closets by Design merchandise.

12    95.    Plaintiff and Class members are entitled to, pursuant to California

13    Civil Code §1780, an order enjoining the above-described wrongful acts and

14    practices of Defendants, the payment of costs and attorneys' fees, and any other

15    relief deemed appropriate and proper by the Court under California Civil Code

16    §1780.

17    96.    Plaintiff requests that this Court enter such orders or judgments as

18    may be necessary to restore any person in interest any money which may have

19    been acquired by means of such unfair business practices, and for such relief as

20    provided in California Civil Code §1780 and the Prayer for Relief.

21

1    97.    Pursuant to California Civil Code §1782, Plaintiff gave Closets by

2  Design, Inc. and CBD Franchising, Inc. notice by separate letters dated March 14,

3  2018, sent by certified mail, of the particular violations of California Civil Code

4  §1770.  The notices requested that Defendants rectify the problems associated with

5  the actions alleged in this Complaint, and give notice to all affected consumers of

6  their intent to so act. Defendants have not yet responded to these notices.

7                              **PRAYER FOR RELIEF**

8        WHEREFORE, Plaintiff prays for relief and judgment against Defendants as

9  follows:

10       A.    That the Court certify the Class under Rule 23 of the Federal Rules of

11 Civil Procedure and appoint Plaintiff as Class Representative and her attorneys as

12 Class Counsel to represent the members of the Class;

13       B.    That the Court declare that Defendants' conduct violates the statutes

14 referenced herein;

15       C.    That the Court preliminarily and permanently enjoin Defendants from

16 conducting business through the unlawful, unfair, or fraudulent business acts or

17 practices, untrue and misleading labeling and marketing, and other violations of

18 law described in this Complaint;

19       D.    That the Court order Defendants to conduct a corrective advertising

20 and information campaign advising consumers that their merchandise does not

21 have the characteristics, uses, benefits, and quality Defendants have claimed;

E.      That the Court order Defendants to implement whatever measures are necessary to remedy the unlawful, unfair, or fraudulent business acts or practices, untrue and misleading advertising, and other violations of law described in this Complaint;

F.      That the Court order Defendants to notify each and every individual and/or business who purchased their merchandise of the pendency of the claims in this action in order to give such individuals and businesses an opportunity to obtain restitution from Defendants;

G.      That the Court order Defendants to pay restitution to restore to all affected persons all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or a fraudulent business act or practice, untrue or misleading labeling, advertising, and marketing, plus pre- and post-judgment interest thereon;

H.      That the Court order Defendants to disgorge all monies wrongfully obtained and all revenues and profits derived by Defendants as a result of their acts or practices as alleged in this Complaint;

I.      That the Court award damages to Plaintiff and the Class;

J.      That the Court enter an Order awarding costs, expenses, and reasonable attorneys' fees; and

K.      That the Court grant such other and further relief as may be just and proper.

1

## **JURY DEMAND**

2

Plaintiff demands a trial by jury on all causes of action so triable.

3 DATED: January 14, 2019      **SCOTT+SCOTT**
                                                **ATTORNEYS AT LAW LLP**

4
                   *s*/ John T. Jasnoch
                                   John T. Jasnoch (281605)

5
                                   jjasnoch@scott-scott.com

6
                                   Joseph A. Pettigrew (236933)
                                   jpettigrew@scott-scott.com

7
                                   600 W. Broadway, Suite 3300
                                   San Diego, CA 92101

8
                                   Telephone: 619-233-4565
                                   Facsimile:  619-233-0508

9
                                   **SCOTT+SCOTT**
                                   **ATTORNEYS AT LAW LLLP**

10
                                   Thomas K. Boardman (276313)
                                   tboardman@scott-scott.com

11
                                   The Helmsley Building
                                   230 Park Avenue, 17th Floor

12
                                   New York NY 10169
                                   Telephone: 212-223-6444

13
                                   Facsimile:  212-223-6334

14
                                   *Counsel for Plaintiff Annemarie Newbold*

15

16

17

18

19

20

21

CLASS ACTION COMPLAINT